PHILLIPS, Appellant,

v.

MUFLEH, Appellee.

[Cite as *Phillips v. Mufleh* (1994), 95 Ohio App.3d 289.]

Court of Appeals of Ohio,
Lucas County.

No. L–93–198.

Decided May 27, 1994.

*Dean Sheldon III,* for appellant.

*Jill Hayes,* for appellee.

*Per Curiam.*

This case is before the court on appeal from a judgment of the Toledo Municipal Court, in which the court affirmed its earlier decision and dismissed the complaint of plaintiff-appellant, Eugene Phillips, for failure of proof. Phillips now raises the following assignments of error:

"Assignment of Error No. 1:

· "The trial court erred in dismissing plaintiff's complaint based upon a finding that plaintiff failed to prove actual damages upon which a judgment could be based under Chapter 158 of the Toledo Municipal Code.

"Assignment of Error No. 2:

"The trial court erred in dismissing plaintiff's complaint based upon a finding that enforcement of rights under Chapter 158 of the Toledo Municipal Code is conditioned upon the testimony of corroborating witnesses.

"Assignment of Error No. 3:

"The trial court erred in dismissing plaintiff's complaint based upon a finding that no specific amount was claimed by plaintiff for attorney's fees and costs.

"Assignment of Error No. 4:

"The trial court erred in dismissing plaintiff's complaint based upon a finding that plaintiff did not ask for an injunction."

On October 22, 1992, Phillips filed a complaint in the Toledo Municipal Court against defendant-appellee, Basem S. Mufleh, the owner and operator of the Lorraine Motor Hotel located in Toledo, Ohio. Phillips alleged the following. Phillips is an individual residing in Toledo who is infected with the human immunodeficiency virus and has symptoms defined by the Centers for Disease Control as those of AIDS. On September 19, 1992, he entered into a contract with Mufleh or his agent for the rental of a room at the Lorraine Motor Hotel for the term of one week. On September 22, 1992, Mufleh told appellant that he could no longer stay at the hotel because appellant had AIDS and Mufleh feared a risk to other guests. Mufleh further prevented appellant's sister and brother-in-law, who had been providing care and comfort to appellant, from using appellant's room because appellant had AIDS. Appellant then alleged that Mufleh's actions violated Sections 158.03 and 158.04 of the Toledo Municipal Code in that Mufleh interrupted, terminated and failed to carry out his contract with appellant for the rental of a hotel room because appellant had AIDS, and that he denied appellant the full and equal enjoyment of goods, services, facilities, privileges, advantages and accommodations of the hotel because appellant had AIDS. Appellant then set forth a claim for actual damages of $10,000, costs and attorney fees as a result of Mufleh's violations of his rights under Chapter 158 of the Toledo Municipal Code and requested that Mufleh be enjoined from further violating Chapter 158.

Subsequently, Mufleh filed an answer denying the substantive assertions of appellant's complaint and asserting a counterclaim for frivolous conduct and requesting damages allegedly incurred in the cleanup of the room rented by appellant.

On April 29, 1993, the case proceeded to a trial to the court. Appellant testified as follows. On September 19, 1992, he entered into a rental agreement with appellee to rent a room at the Lorraine Motor Hotel for $105 per week. During the night of September 20 or 21, appellant awoke feeling sick. He subsequently vomited blood into the toilet in his bathroom. He then went to the front desk and asked the employee on duty to call an ambulance. When a rescue squad arrived, appellant informed the paramedics that he was HIV-positive so that they could protect themselves. At Mercy Hospital, appellant was informed that he had a bleeding ulcer, was given medication and was released the next day. When he returned to the Lorraine Motor Hotel, however, appellee told him that

he could no longer stay there because he had AIDS. Appellant responded that he had been treated for a bleeding ulcer, but appellee insisted that appellant return to the hospital and obtain written proof of that condition. In a weakened state, appellant returned to the hospital and obtained the letter appellee requested. When he returned, however, appellee was gone for the day and the employee on duty allowed him back in his room.

That night, appellant again awoke feeling ill. Appellant then called a taxi and went to St. Vincent's Hospital, where he was admitted and taken to emergency surgery. Appellant was unconscious for several days and remained in the hospital for approximately one month. While in the hospital, appellant asked his sister and brother-in-law to retrieve his personal belongings from the hotel, but when they attempted to do so, they were refused entry. Thereafter, upon his release from the hospital, appellant telephoned appellee and asked if he had a room for rent. Appellant testified that appellee told him he would not allow anyone with AIDS to live in his hotel and then slammed down the telephone receiver.

Throughout his testimony, appellant revealed that he was embarrassed by this series of incidents, particularly because appellee's initial statements were made in the hotel lobby in front of other guests, that he fears a recurrence of the situation, and that he no longer trusts people. In addition, he testified that he lost a $5 security deposit on a room key, and that his monthly expenses increased by $200 to $300 when he found alternative lodging.

At the conclusion of the trial, the court initially granted appellee's motion for a directed verdict, finding that appellant had failed to prove damages. Upon appellant's request, however, the court indicated that it would reconsider the case upon the parties' briefing the issue of emotional damages. On June 22, 1993, the court released its decision and judgment entry, affirming its previous dismissal of the case for failure of proof. In particular, the court found that the testimony as to actual damages was speculative and uncertain, that appellant's claims of emotional damages did not constitute actual damages for which recovery could be obtained under Section 158 of the Toledo Municipal Code, and that the court was precluded from granting injunctive relief because appellant failed to request it. It is from this judgment that appellant now appeals.

Appellant's assignments of error all address the trial court's dismissal of his case. Appellant contends that the trial court's dismissal of his case was erroneous because the court mistakenly held that appellant failed to prove actual damages, that enforcement of rights under Section 158 of the Toledo Municipal Code required the testimony of corroborating witnesses, that appellant failed to claim a specific amount for attorney fees and costs, and that appellant's complaint failed to request an injunction.

 Initially, we are compelled to address a procedural aspect of this case. In the judgment entry appealed to this court, the lower court stated that it was ruling on "an oral motion for reconsideration of the Court's dismissal of said action for Plaintiff's failure to prove his claim for damages." As a general rule, "motions for reconsideration of a final judgment in the trial court are a nullity." *Pitts v. Dept. of Transp.* (1981), 67 Ohio St.2d 378, 379, 21 O.O.3d 238, 239, 423 N.E.2d 1105, 1106. Therefore, once a final judgment is entered, it cannot be reconsidered by the trial court. In the present case, however, while the trial court did orally grant the motion for a directed verdict, it did not enter that judgment on its journal, and, therefore, no final judgment had been entered. See *Economy Fire & Cas. Co. v. Craft Gen. Contr., Inc.* (1982), 7 Ohio App.3d 335, 337, 7 OBR 432, 434–435, 455 N.E.2d 1037, 1040–1041. Where no final judgment has been entered, a trial court has continuing jurisdiction to revise its order at any time and can entertain a motion for reconsideration. Therefore, there is no jurisdictional problem in the order appealed to this court, and we have jurisdiction to hear this appeal.

In reviewing a ruling on a motion for a directed verdict, we are guided by the following standard of review:

"[I]f all the evidence relating to an essential issue is sufficient to permit only a conclusion by reasonable minds against a party, after construing the evidence most favorably to that party, it is the duty of the trial court to instruct a finding or direct a verdict on that issue against that party." *O'Day v. Webb* (1972), 29 Ohio St.2d 215, 220, 58 O.O.2d 424, 427, 280 N.E.2d 896, 899–900.

In the court below, appellant filed his complaint pursuant to Chapter 158 of the Toledo Municipal Code. That chapter provides in pertinent part:

"158.03. Housing.

"(a) No person having a housing accommodation for rent or lease, or any authorized agent or employee of such person shall do or attempt to do any of the following as a result of the fact, in whole or in part, that a person has AIDS or any condition related to AIDS or is a care giver:

"(1) Interrupt, terminate or fail or refuse to initiate or conduct any transaction in real property, including but not limited to rental; to require different terms for such transaction; falsely to represent that an interest in real property is not available for transaction[.]

"* * * *

"158.04. Business establishments.

"(a) It shall be an unlawful business practice for any person to deny any individual the full and equal enjoyment of the goods, services, facilities, privileges,

advantages and accommodations of any business establishment including, but not limited to medical, dental, health care and convalescent services of any kind whatsoever on the basis, in whole or in part, of the fact that such person has the medical condition AIDS or any condition related to AIDS, or is a care giver.

"* * *

"158.08. Liability.

"Any person who violates any of the provisions of this chapter shall be liable for actual damages, costs and attorney fees to the individual whose rights are violated.

"158.09. Enforcement.

"(a) Civil Action.

"Any aggrieved person may enforce the provisions of this chapter by means of a civil action.

"(b) Injunction.

"(1) Any person who commits, or proposes to commit, an act in violation of this chapter may be enjoined therefrom by a court of competent jurisdiction.

"(2) Action for injunction under this subsection may be brought by any aggrieved person, by the City Attorney or by any person or entity which will fairly and adequately represent the interests of the protected class."

■ In the case below, the court, in dismissing the case, determined that appellant had not proven actual damages for which he could be compensated under the Toledo Municipal Code and failed to claim any specific amount for attorney fees or costs. The court further found that appellant's claims that appellee's actions caused him embarrassment and fear, without any corroboration or manifestation[1] of these effects, did not constitute actual damages for which recovery could be obtained. In Ohio, actual damages for emotional distress have been recognized by the Supreme Court since 1983. In *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 6 OBR 421, 453 N.E.2d 666, syllabus, the court held:

"One who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

Under this statement of law, a contemporaneous physical injury emanating from the emotional distress is not required to establish a claim for intentional

---

1. Although appellant argues that the lower court required testimony of a corroborating witness, we read the court's decision as requiring corroboration by a physical manifestation of the claimed emotional distress.

infliction of emotional distress. In determining whether conduct is extreme or outrageous, the court in *Yeager* found that such cases should be guided by Comment *d* to Section 46 of the Restatement of the Law 2d, Torts (1965) 73:

" 'It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability had been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" ' " *Id.*, 6 Ohio St.3d at 374–375, 6 OBR at 426, 453 N.E.2d at 671.

The court in *Yeager*, however, further noted its recognition of actionable emotional distress in a different class of cases:

" 'Where one is in a situation in which he is entitled to protection from another, *such as would be due to a guest from an innkeeper*, to a patron from a theater, or to a passenger from a common carrier, *he may recover for any injuries, including fright and terror, which result from* a wilful breach of duty, insult or *unlawful treatment. Cincinnati Northern Traction Co. v. Rosnagle, an Infant* [ (1911) ], 84 Ohio St. 310 [95 N.E. 884] * * *.' *Bartow v. Smith* [ (1948), 149 Ohio St. 301], at 306 [37 O.O. 10, 13, 78 N.E.2d 735, 738]." (Emphasis added.) *Id.*, 6 Ohio St.3d at 373, 6 OBR at 425, 453 N.E.2d at 670, fn. 2.

In *Cincinnati Northern*, the court affirmed a judgment awarding damages for the fright and terror inflicted upon a ten-year-old boy wrongfully expelled at night from a street car because the only nickel he had for fare was mutilated. Because the conductor's action was intentional and willful, the court found the award appropriate. See, also, Magruder, Mental and Emotional Disturbance in the Law of Torts (1936), 49 Harvard L.Rev. 1033, 1051–1052.

We find the present case falls within the different class of cases noted above. The undisputed evidence revealed that appellant was a guest at a hotel which, intentionally and willfully and in violation of the Toledo Municipal Code, denied him access to his room and subsequently denied him a room because he has the disease known as AIDS. The evidence before the lower court indicated that the hotel's unlawful treatment of appellant caused him humiliation and embarrassment, caused him to fear a recurrence of the situation, and caused him to no longer trust people. While these emotional damages may not rise to the extreme emotional distress actionable under *Yeager*, they do fall within that

category of cases which recognizes lesser emotional damages based on the relationship between the plaintiff and defendant.

Accordingly, the lower court erred in concluding that appellant had failed to prove his damages and in requiring a corroborating manifestation of the emotional distress. Therefore, the court erred in dismissing the case and the first and second assignments of error are found well taken.

Appellant further argues that the lower court erred in basing its dismissal on appellant's failure to claim a specific amount of attorney fees or costs. "The general rule in Ohio is that, absent a statutory provision allowing attorney fees as costs, the prevailing party is not entitled to an award of attorney fees unless the party against whom the fees are taxed was found to have acted in bad faith." *State ex rel. Crockett v. Robinson* (1981), 67 Ohio St.2d 363, 369, 21 O.O.3d 228, 232, 423 N.E.2d 1099, 1103. In the present case, the ordinance under which appellant brought his lawsuit does provide for attorney fees to the individual whose rights where violated. Toledo Municipal Code Section 158.08. The lower court herein appears to have based its dismissal for failure of proof, in part on appellant's failure to claim a specific amount of attorney fees. Such attorney fees, however, can only be determined after the conclusion of the trial on the merits, when the validity of a plaintiff's claim has been decided. In making such a determination, the *court* is to consider whether the attorney fees are warranted and, if so, the reasonable value thereof. *Davis v. Owen* (1985), 26 Ohio App.3d 62, 64, 26 OBR 236, 237–238, 498 N.E.2d 202, 204. The third assignment of error is therefore well taken.

Finally, appellant contends that the lower court erred in basing its dismissal of his case on his failure to seek an injunction. As set forth above, Section 158.09 of the Toledo Municipal Code provides that any aggrieved person may enforce the provisions of Chapter 158 of the Toledo Municipal Code by seeking an injunction in a civil action. In his complaint, appellant did request injunctive relief. The trial court, however, in its decision and judgment entry stated: "It is true that under Toledo Municipal Code [Section] 580.09 [*sic*], the Code allows enforcement of this section by means of a civil action or injunction. However, Plaintiff did not ask for an injunction * * *." Moreover, appellant did establish at the trial below that he was an aggrieved person under the statute at issue. Accordingly, even absent proof of actual damages, appellant had a viable cause of action, and the lower court erred in dismissing the case on the ground that appellant had not sought an injunction. The fourth assignment of error is therefore well taken.

On consideration whereof, the court finds that substantial justice has not been done the party complaining, and the judgment of the Toledo Municipal Court is

reversed. This cause is remanded for further proceedings not inconsistent with this decision. Costs of this appeal to appellee.

*Judgment reversed*
*and cause remanded.*

GLASSER, MELVIN L. RESNICK and SHERCK, JJ., concur.