**Dana R. DERUNGS, et al., Plaintiffs,**

v.

**WAL–MART STORES, INC., et al., Defendants.**

**No. C–3–99–190.**

United States District Court, S.D. Ohio, Western Division.

March 5, 2001.

Robert N. Stein, Cleveland, OH, Susan Marie Brasier, Falke & Dunphee, Dayton, OH, for plaintiffs.

Thomas Lucyan Czechowski, Green & Green, Dayton, OH, Bryan W. Riley, Gregory S. Muzingo, Bentonville, AR, for defendant.

DECISION OVERRULING PLAINTIFFS' MOTION TO STRIKE (DOC. # 38); PLAINTIFFS' MOTION TO CERTIFY (DOC. # 39) OVERRULED; DEFENDANT WAL–MART'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' REMAINING CLAIMS (DOC.# 28) SUSTAINED; FURTHER PROCEDURES ORDERED OF DEFENDANT WAL–MART; THIS DECISION IS NOT A FINAL, APPEALABLE ORDER

RICE, Chief Judge.

■ Three mothers and their infant children commenced this litigation against Defendant Wal–Mart Stores, Inc. ("Wal–Mart"), and five John Doe employees,[1] alleging: (1) sex and age discrimination in violation of Ohio Revised Code § 4112.02(G), which prohibits discrimination by places of public accommodation; (2) intentional infliction of emotional distress;[2] (3) tortious interference with a mother's right to breast-feed; and (4) loss of consortium.[3] (Amended Complaint, attached to Notice of Removal, Doc. # 1 at Exh. B). The Plaintiffs are Dana Derungs and her infant son, Devin Derungs; Jennifer Gore and her infant son, Austin Gore; and Angie Baird and her infant daughter, Kassidee Baird. In support of their various claims, the Plaintiffs allege that Wal–Mart unlawfully interrupted their breast-feeding activities in its stores and asked them either to leave the premises or to breast-feed in a public restroom. As a result of Wal–Mart's refusal to allow them to breast-feed in the public areas of its stores, the Plaintiffs filed a Complaint in state court on March 31, 1999. (Doc. # 1 at Exh. A). Thereafter, they filed an amended Complaint, and Wal–Mart removed the action on the basis of diversity of citizenship.[4] (*Id.* at Exh. B).

1. Given that no "John Doe" Defendants have ever been identified by the Plaintiffs, the Court will treat this action as one against only Wal–Mart.

2. Count V of the Plaintiffs' amended Complaint sets forth their "emotional distress" claim. Upon review, the Court notes that Count V actually alleges only *negligent* misconduct by Wal–Mart, not *intentional* infliction of emotional distress. Both parties have briefed the emotional distress issue, however, as if they were addressing an intentional infliction of emotional distress claim in Count V, relying exclusively on case law dealing with such a claim. As a result, the Court likewise will treat Count V as an intentional infliction of emotional distress claim. In so doing, the Court notes that Ohio law does not provide a cause of action for negligent infliction of emotional distress under the facts alleged by the Plaintiffs. *See, e.g., Heiner v. Moretuzzo*, 73 Ohio St.3d 80, 652 N.E.2d 664, 669–670 (1995) (recognizing that a plaintiff cannot recover for negligent infliction of emotional distress unless she has either witnessed or experienced a dangerous accident or experienced some actual physical peril).

3. Although the amended Complaint is somewhat unclear with respect to the particular causes of action alleged, the Plaintiffs previously filed a Memorandum which establishes that they are pursuing the four causes of action mentioned above. (*See* Doc. # 21 at 2).

4. The Court notes that diversity jurisdiction exists because the Plaintiffs are all citizens of Ohio, and Wal–Mart is a citizen of Arkansas, with its principal place of business and place of incorporation in that state. Although it is extremely likely that the five John Doe Defendants are citizens of Ohio, given that they work in Dayton-area Wal–Mart stores, they remain unidentified in the Plaintiffs' amended Complaint. It is well settled that the citizenship of John or Jane Doe defendants is disregarded for purposes of determining diversity. *See, e.g., Alexander v. Electronic Data Systems Corp.*, 13 F.3d 940, 948 (6th Cir.1994) (hold-

On September 26, 2000, the Court filed a Decision and Entry (Doc. # 36), sustaining a Motion for Partial Summary Judgment (Doc. # 12) filed by Wal–Mart. In that ruling, the Court granted Wal–Mart summary judgment on the Plaintiffs' claim that prohibiting breast-feeding in a place of public accommodation constitutes sex and age discrimination in violation of Ohio Revised Code § 4112.02(G), Ohio's "public accommodation" statute. Now pending before the Court are three other Motions: (1) the Plaintiffs' Motion to Strike a Motion for Summary Judgment on Remaining Claims (Doc. # 38); (2) the Plaintiffs' Motion to Certify a question to the Ohio Supreme Court (Doc. # 39); and (3) Wal–Mart's Motion for Summary Judgment on the Plaintiffs' Remaining Claims (Doc. # 28).

## I. Factual Background[5]

The parties do not dispute the material facts underlying this litigation.[6] On April 7, 1997, Dana Derungs attempted to breast-feed her eleven-week-old son, Devin, on a bench next to a dressing room at a Wal–Mart store in Lebanon, Ohio. (Derungs depo. at 56–57, 65). As Derungs sat down to begin breast-feeding, a female employee told her that "you can't do that in here." (*Id.* at 66). With a "nasty tone," the employee informed Derungs that she would have to breast-feed in the restroom because doing so on the bench might offend people. (*Id.* at 67, 77). Derungs then inquired whether the employee would eat her meal in the restroom. (*Id.*). In response, the employee reiterated that Derungs would have to go into the restroom or leave the store. (*Id.* at 68). Derungs began to cry. She was "appalled," "upset," and "embarrassed" about the incident, which at least two customers witnessed. (*Id.* at 68–70). As a result, she abandoned her shopping cart and left the store. (*Id.* at 71).

On November 8, 1997, Jennifer Gore attempted to breast-feed her three-month-old son, Austin, while waiting in a lay-away line at a Wal–Mart store in Trotwood, Ohio. (Gore depo. at 48, 66). A store employee approached and told Gore that

---

ing that a personnel manager identified as "Jane Doe" was not a defendant whose citizenship would be considered in determining whether a federal court had diversity jurisdiction in a handicap discrimination suit).

5. For purposes of ruling on Wal–Mart's Motion for Summary Judgment, the Court will construe the facts, and all reasonable inferences drawn therefrom, in a light most favorable to the Plaintiffs, who are the non-moving parties.

6. The facts set forth herein are taken from the depositions of Plaintiffs Dana Derungs, Jennifer Gore and Angie Baird. Although copies of those depositions have been filed with the Court, certain pages from the depositions of Gore and Baird are missing. Some of the missing pages are attached to Wal–Mart's prior Motion for Partial Summary Judgment (Doc. # 12), and Wal–Mart has incorporated those pages into its present Motion for Summary Judgment by reference (Doc. # 28 at 2). Wal–Mart did not authenticate the excerpts attached to its prior Motion (and the Court did not rely upon those excerpts when ruling on that earlier Motion), presumably due to the fact that copies of the depositions have been filed. Given that the filed copies of the depositions of Gore and Baird are missing certain relevant pages, however, the Court hereby directs Wal–Mart to file, within 10 days from date, either (1) an affidavit authenticating the deposition excerpts attached to its prior Motion for Partial Summary Judgment (Doc. # 12), which excerpts were relied upon by this Court in rendering the opinion herein, or (2) *complete* copies of the depositions of Gore and Baird. Wal–Mart's failure to comply with this requirement will result in the Court vacating its decision herein and reconsidering Wal–Mart's present Motion without relying upon the unauthenticated deposition pages attached to the prior Motion for Partial Summary Judgment.

breast-feeding in the store was "inappropriate" and that she was "not allowed to do that here." (*Id.* at 48, 51). The employee informed Gore that she could either breast-feed in the restroom or leave the store. (*Id.* at 50 51). Gore was embarrassed, and she expressed her disbelief to the employee. (*Id.* at 48). She also elected to leave the store with her husband and son. (*Id.* at 51–52).

On February 18, 1999, Angie Baird attempted to breast-feed her five-month-old daughter, Kassidee, on a bench near the portrait studio at a Wal–Mart store in Trotwood, Ohio. (Baird depo. at 28, 33–34). A store employee interrupted the activity and stated that "she thought it was inappropriate" for Baird to breast-feed in that location. (*Id.* at 38). The employee also informed Baird that she could either breast-feed in the restroom or leave the store. (*Id.*). In response, Baird was "in tears" and "embarrassed." (*Id.* at 49). She elected to leave with her husband and daughter.[7] (*Id.* at 38).

## II. *Summary Judgment Standard*

The Court first will set forth the parties' relative burdens once a motion for summary judgment is made. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S.

317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548. *See also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial[,]" quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 [6th Cir.1987] ). The burden then shifts to the non-moving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposi-

---

**7.** The Plaintiffs previously set forth a number of additional facts, which may or may not be disputed by Wal–Mart. Those additional facts, however, are immaterial to the issues raised in the pending Motion for Summary Judgment on Plaintiffs' Remaining Claims. Among other things, the Plaintiffs allege that Wal–Mart's restrooms are "filthy" and that they lack appropriate places for a nursing mother to sit. The Plaintiffs also allege that public restrooms are generally inappropriate places for infants to eat. Finally, the Plain-

tiffs allege that breast-feeding is better for infants than feeding from a bottle. In its pending Motion for Summary Judgment, however, Wal–Mart does not argue that its restrooms are clean, that restrooms are suitable places to eat, or that breast-feeding does not provide infants with health benefits. These issues simply are not material with respect to the resolution of Wal–Mart's pending Motion for Summary Judgment on Plaintiffs' Remaining Claims (Doc. # 28).

tion that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law under Fed.R.Civ.P. 50. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Michigan Protection and Advocacy Service, Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir.1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff"). Rather, Rule 56(e) "requires the non-moving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir. 1992). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in the favor of that party.

*Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure* § 2726.

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990); *see also L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.,* 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915 n. 7 (5th Cir.) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment ...."), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, upon only those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

### III. *Plaintiffs' Motion to Strike Motion for Summary Judgment (Doc. # 38)*

■ The Plaintiffs filed this Motion (Doc. # 38) on October 12, 2000, seeking to strike Wal–Mart's Motion for Summary Judgment on Plaintiffs' Remaining Claims

(Doc. # 28).[8] In support, the Plaintiffs note that Wal–Mart already has obtained summary judgment on their claim of sex and age discrimination in violation of Ohio Revised Code § 4112.02(G). Given that Wal–Mart previously filed one Motion for Summary Judgment, the Plaintiffs contend that the company may not now file a second Motion for Summary Judgment. The Plaintiffs argue that Wal–Mart's filing of successive Motions violates Rule 12(g) of the Federal Rules of Civil Procedure and Rule 7.2(a)(2) of the Local Rules of Civil Procedure.[9] (Doc. # 38 at 1–4).

Upon review, the Court finds the Plaintiffs' argument to be unpersuasive. Wal–Mart's filing of a second Motion for Summary Judgment violates neither Fed. R.Civ.P. 12(g), nor S.D. Ohio Civ. R. 7.2(a)(2). In relevant part, Rule 12(g) provides that "[i]f a party *makes a motion under this rule* but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted. . . ." (Emphasis added). This language has no applicability in the present case. Wal–Mart did not bring its prior Motion for Summary Judgment under Rule 12. Rather, Wal–Mart expressly brought the Motion under Rule 56(c). (*See* Motion, Doc. # 12 at 2). Nothing in Rule 56 prohibits the filing of successive summary judgment motions,[10]

and this Court routinely entertains such motions. Likewise, S.D. Ohio Loc. R. 7.2(a)(2) does not prohibit the filing of piecemeal summary judgment motions. Rule 7.2(a)(2) provides for the filing of a memorandum in opposition to a motion for summary judgment and a reply memorandum. As the Plaintiffs properly note, it also provides that "[n]o additional memoranda beyond those enumerated will be permitted, except upon leave of court for good cause shown." Although the Plaintiffs rely upon this language to argue that Rule 7.2(a)(2) prohibits the filing of successive summary judgment motions, they are mistaken. Rule 7.2(a)(2) merely proscribes the filing of additional memoranda supporting or opposing a pending motion for summary judgment. Absolutely nothing in that Rule prohibits the filing of a second motion for summary judgment. Accordingly, the Plaintiffs' Motion to Strike (Doc. # 38) is overruled.[11]

## IV. *Plaintiffs' Motion to Certify (Doc. # 39)*

■ In their Motion to Certify, the Plaintiffs ask the Court to certify the following issue to the Ohio Supreme Court for resolution:

Whether a prohibition against breast-feeding in a place of public accommodation constitutes sex or age discrimination under Ohio's Public Accommodation

---

8. Alternatively, if the Court refuses to strike Wal–Mart's pending Motion for Summary Judgment, the Plaintiffs ask the Court to treat their Motion as a Memorandum opposing Wal–Mart's Motion. (Doc. # 38 at 1).

9. In support of their Motion, the Plaintiffs *cite* Fed.R.Civ.P. 12(f), (g) and (h). (Doc. # 38 at 1). In their *analysis*, however, they address only the applicability of Rule 12(g). Consequently, the Court will do likewise in its analysis herein.

10. Rule 56(b) provides only that "[a] party against whom a claim . . . is asserted . . . may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

11. At the Plaintiffs' request, the Court will treat their failed Motion to Strike as a Memorandum opposing Wal–Mart's Motion for Summary Judgment (Doc. # 28).

Statute (Ohio Revised Code [§ ]4112.02(G)).

(Doc. # 39 at 1).

In a September 26, 2000, Decision and Entry (Doc. # 36), the Court expressly resolved the foregoing issue, holding that a prohibition against breast-feeding in a place of public accommodation does not constitute sex or age discrimination in violation of Ohio Revised Code § 4112.02(G). (*Id.* at 19). Dissatisfied with the Court's ruling, the Plaintiffs filed their Motion to Certify on October 26, 2000, seeking a second opinion from the Ohio Supreme Court.[12]

■ Upon review, the Court will overrule the Plaintiffs' Motion to Certify (Doc. # 39). If the Plaintiffs had filed their Motion prior to the filing of the September 26, 2000, Decision and Entry rejecting their § 4112.02(G) claim, the Court *may* have sustained the Motion, given the absence of Ohio case law on point. In effect, however, the Plaintiffs are now seeking to have the Ohio Supreme Court review a judgment of this Court. The appropriate time to seek certification of a state-law issue is before a District Court resolves the issue, not after receiving an unfavorable ruling. If the Plaintiffs wish to obtain a second opinion as to the correctness of this Court's September 26, 2000, Decision and Entry, they may seek to file an appeal to the Sixth Circuit. Accordingly, their Motion to Certify (Doc. # 39) is overruled.

## V. *Wal–Mart's Motion for Summary Judgment on Remaining Claims (Doc. # 28)*

Wal–Mart filed this Motion on May 16, 2000, seeking summary judgment on the three remaining claims in the Plaintiffs' amended Complaint: (1) intentional infliction of emotional distress[13]; (2) tortious interference with a mother's right to breast-feed; and (3) loss of consortium. As a means of analysis, the Court will address each of the foregoing claims in turn.

### A. *Intentional Infliction of Emotional Distress*

In support of its Motion for Summary Judgment, Wal–Mart contends that the Plaintiffs' emotional distress claim fails, as a matter of law, because the conduct of its employees was not "extreme and outrageous" under the well-established standard set forth by the Ohio Supreme Court in *Yeager v. Local Union 20*, 6 Ohio St.3d

12. In support of their Motion, the Plaintiffs contend that this Court's ruling conflicts with a prior decision by the Ohio Civil Rights Commission in *Dana R. Derungs v. Wal–Mart Stores, Inc.*, Case No. G5040797, (26347) 052097 (1997). (Doc. # 39 at 1). Although the ruling by the Ohio Civil Rights Commission involves one or more of the Plaintiffs in the present case and purportedly is favorable to them, they inexplicably failed to mention it when opposing Wal–Mart's earlier Motion for Summary Judgment. The Plaintiffs also have failed to attach a copy of this administrative decision to their Motion to Certify, and it is not available on Westlaw. In any event, if one or more of the Plaintiffs truly prevailed on the merits against Wal–Mart in state administrative proceedings, the Court questions why that Plaintiff or Plaintiffs would then commence litigation to raise the same claim again. If one or more of the Plaintiffs already prevailed on the merits before the Ohio Civil Rights Commission, it also seems likely that Wal–Mart would have brought that fact to this Court's attention, immediately, upon being sued in this court for the same claim.

13. As noted, *supra,* the Plaintiffs' amended Complaint actually alleges *only* negligent misconduct by Wal–Mart with respect to the emotional distress claim in Count V, but the parties have treated Count V as if it alleges intentional infliction of emotional distress. Given that negligent infliction of emotional distress is not actionable under the facts alleged by the Plaintiffs, the Court also will treat Count V as a claim for intentional infliction of emotional distress.

369, 453 N.E.2d 666 (1983).[14] (Doc. # 28 at 3–4). Wal–Mart also contends that it is entitled to summary judgment, insofar as the Plaintiffs' amended Complaint might be read as alleging an alternative form of emotional distress based on public policy. (*Id.* at 4 n. 4).

▮ In response, the Plaintiffs insist that they are, in fact, asserting the alternative form of emotional distress based on public policy. (Doc. # 38 at 4–8). In *Meyers v. Hot Bagels Factory, Inc.*, 131 Ohio App.3d 82, 721 N.E.2d 1068 (1st Dist. 1999), the court explained this alternative type of emotional distress claim as follows:

Ohio also recognizes an actionable form of emotional distress in cases where the business relationship of the plaintiff and defendant creates a situation where the plaintiff is entitled to protection by the defendant. In that situation, the plaintiff may recover for "any injuries, including fright and terror, which result from a willful breach of duty, insult or unlawful treatment." Cases that have recognized this type of willful or intentional infliction of emotional distress date from 1911 to the present and include the removal of a ten-year-old child from a streetcar at night because the only coin he had for the fare was mutilated and a hotel's refusal to provide a guest access to his room because he had HIV.

Liability is premised on public policy. The defendant, by "carrying on a business of a public nature, is by law charged with the duty of extending to his guests 'respectful and decent treatment,' and of refraining from willful conduct toward them that would interfere with their comfort or humiliate or distress them. In other words, here is a situation where for reasons of policy and because of the relationship of the parties, the law gives the plaintiff redress for mental distress and humiliation caused by the defendant's insulting conduct." In this situation, the insults may amount to less than extreme outrage in that the special relationship compels a higher than normal duty of care. Further it is the willful conduct of the defendant and not necessarily the seriousness of the emotional distress that gives rise to liability under this type of case.

*Id.* at 1076–1077 (footnotes omitted).

▮ Assuming, arguendo, that a "special relationship" existed between the Plaintiffs and Wal–Mart, the Court nevertheless concludes that Wal–Mart is entitled to judgment as a matter of law on the intentional infliction of emotional distress claim against it. If a "special relationship" existed at the time of the incidents in question, then Wal–Mart was "charged with the duty of extending to [the Plaintiffs] respectful and decent treatment,' and of refraining from willful conduct toward them that would interfere with their comfort or humiliate or distress them." *Meyers*, 721 N.E.2d at 1077.

---

**14.** In *Yeager*, the court adopted the standard for intentional infliction of emotional distress set forth in the Restatement of Torts. Specifically, the Court described the cause of action as follows: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Yeager*, 453 N.E.2d at 671, quoting Restatement of the Law 2d, Torts (1965) 71, Section 46(1). The *Yeager* court defined "extreme and outrageous" conduct as actions that are "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*, quoting Restatement of Torts at 73. "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Id.*

Given the Court's determination, both *infra* and in its prior summary judgment ruling, that the Plaintiffs have no legal "right" to breast-feed in the public areas of Wal–Mart, however, the store's "duty" to refrain from insulting the Plaintiffs or treating them unlawfully cannot be transformed into an affirmative obligation to allow the breast-feeding activity at issue. In other words, *Meyers* cannot reasonably be read as requiring a merchant to permit conduct that it otherwise has a right to prohibit, merely because a patron who wishes to engage in such conduct might be embarrassed, humiliated or distressed when asked to refrain from doing so.

At most, Ohio law might impose upon Wal–Mart a duty to treat the Plaintiffs lawfully and with decency and respect when prohibiting them from breast-feeding in the public areas of its stores. In the present case, however, the Court has determined, both *infra* and in its prior summary judgment ruling, that Wal–Mart *did* treat the Plaintiffs lawfully when it prohibited them from breast-feeding in the public areas of its stores. In addition, the deposition testimony cited by Wal–Mart (and relied upon by the Court in its recitation of the facts, *supra*), indicates that the store's employees *did* treat the Plaintiffs with sufficient decency and respect when preventing them from breast-feeding. The Plaintiffs cite *no evidence* to suggest that Wal–Mart unnecessarily caused them to endure humiliation or distress when it exercised its lawful right to prohibit breast-feeding in the public areas of its stores.

To the contrary, as Derungs sat down to begin breast-feeding, an employee simply told her that "you can't do that in here." (Derungs depo. at 66). Although Derungs perceived a "nasty tone," the employee did nothing more than inform her that she would have to breast-feed in the restroom or leave the store. (*Id.* at 68). Likewise, a store employee told Gore that breast-feeding in the store was "inappropriate" and that she was "not allowed to do that here." (Gore depo. at 48, 51). The employee also informed Gore that she could either breast-feed in the restroom or leave the store. (*Id.* at 50–51). Finally, a Wal–Mart employee informed Baird that "she thought it was inappropriate" for her to breast-feed in a public part of the store. (Baird depo. at 38). The employee also told Baird that she could either breast-feed in the restroom or leave the store. (*Id.*). Nothing about these incidents suggests that the employees did anything other than lawfully restrict breast-feeding activity in Wal–Mart's stores.[15] As a result, viewing the evidence and all reasonable inferences drawn therefrom in a light most favorable to the Plaintiffs, the Court finds no genuine issue of material fact precluding the entry of summary judgment in favor of Wal–Mart on the Plaintiffs' emotional distress claim.

## B. *Tortious Interference with a Mother's Right to Breast–Feed*

■ In support of its Motion for Summary Judgment, Wal–Mart argues that

---

**15.** In contrast, the store employee in *Meyers* engaged in unlawful acts of sexual harassment by telling a female patron that she "must be a really good fuck," asking numerous times whether she was "a good fuck," and telling her that she had "a nice firm ass." *Meyers*, 721 N.E.2d at 1072–1073. Likewise, in *Phillips v. Mufleh*, 95 Ohio App.3d 289, 642 N.E.2d 411 (6th Dist.1994), a hotel operator unlawfully denied the plaintiff access to a room because he had AIDS. In both cases, the appellate courts concluded that the plaintiffs had a viable claim for intentional infliction of emotional distress as a matter of public policy. In the present case, however, Wal–Mart's employees acted lawfully when they prohibited the Plaintiffs from breast-feeding, and the Plaintiffs cite no evidence to suggest that the employees unnecessarily caused them to endure emotional distress.

"tortious interference with a mother's right to breast-feed" is not a recognized cause of action under Ohio law. (Doc. #28 at 4). In response, the Plaintiffs accuse Wal–Mart of "baldly mischaracteriz[ing]" their claim. (Doc. #38 at 8). The Plaintiffs themselves characterize their claim as alleging "tortious interference with a mother's duty to feed and maintain her children." (Doc. #21 at 2). Notably, however, the only type of "feeding" and "maintaining" at issue in the present case is breast-feeding. Wal–Mart did not prohibit the adult Plaintiffs from bottle-feeding their infants in the public areas of its stores. In addition, while a mother does have a legal duty to provide "necessary subsistence" for her child (see Ohio Revised Code § 2151.03(A)(3)), the Plaintiffs cite absolutely no authority for the proposition that Ohio law imposes on a woman a *legal duty* to breast-feed. Consequently, what the Plaintiffs are really alleging is that Wal–Mart tortiously interfered with their *right* to breast-feed, not their *duty* to do so. As a result, Count VI properly may be read as alleging that Wal–Mart tortiously interfered with a mother's right to breast-feed.

In any event, Wal–Mart is entitled to summary judgment on this claim, regardless of how it is characterized. In their Memorandum opposing summary judgment, the Plaintiffs rely upon Ohio Revised Code § 2151.03(A)(3) and § 2919.21(C). The former provision defines the phrase "neglected child" to include any child whose parent fails to provide "necessary subsistence." The latter provision makes it unlawful for any person to cause a child to become a "neglected child." In support of their tortious interference claim, the Plaintiffs construe § 2919.21(C) as making it a crime to "interfere with a parent's obligation to feed her child." (Doc. #38 at 9). They then argue that Wal–Mart engaged in such interference when it prohib-

ited them from breast-feeding in the public areas of its stores. Finally, the Plaintiffs contend that Ohio Revised Code § 2307.60 provides them with a civil cause of action for Wal–Mart's violation of a criminal statute, namely § 2919.21(C). (*Id.* at 8–9).

Upon review, the Court finds the Plaintiffs' analysis to be unpersuasive. No rational trier of fact could find that Wal–Mart caused the infant Plaintiffs to become "neglected children," when it required the adult Plaintiffs either to breast-feed them in the restroom or to leave the store. The Court is unaware of any authority for the proposition that the interruption of one feeding session renders an infant a "neglected child" under Ohio law, and such an argument is patently unreasonable on its face. In addition, Wal–Mart did not prevent the adult Plaintiffs from bottle-feeding their children anywhere in its stores. Nor did it prevent them from breast-feeding outside of the public areas of its stores. In short, Wal–Mart's act of limiting the adult Plaintiffs' ability to breast-feed in its stores simply did not cause the infant Plaintiffs to become "neglected children," as a matter of law. Furthermore, the Plaintiffs' tortious interference claim rests upon the unfounded premise that they have a legal "right" to breast-feed in the public areas of Wal–Mart's stores. Nothing in Ohio Revised Code § 2151.03(A)(3) or § 2919.21(C) bestows such a right upon them, and the Court previously found their reliance on Ohio's "public accommodation" statute to be misplaced. Given the Plaintiffs' failure to identify any other source of their alleged right to breast-feed in the public areas of Wal–Mart's stores, the Court concludes that no such right exists. As a result, Wal–Mart is entitled to summary judgment on the Plaintiffs' tortious interference claim for this alternative reason as well.

## C. *Loss of Consortium*

In its Motion for Summary Judgment, Wal–Mart insists that the one-time interruption of the Plaintiffs' breast-feeding activities does not support a cause of action for loss of consortium, as a matter of law. In support, Wal–Mart asserts that a claim for loss of filial consortium requires evidence of some physical injury, either to the parent or to the child. (Doc. # 28 at 4–5). In response, the Plaintiffs insist that their loss of consortium claim need not be supported with evidence of a physical injury. (Doc. # 38 at 9–10).

 Upon review, the Court need not decide whether the Plaintiffs' loss of consortium claim must be support with evidence of a physical injury. The claim fails, as a matter of law, for a more fundamental reason. Under Ohio law, a claim for loss of consortium is "derivative" in that it depends upon a defendant having committed a legally cognizable tort against someone.[16] Stated differently, the adult Plaintiffs cannot recover for loss of consortium in the present case unless Wal–Mart committed a legally cognizable tort against the infant Plaintiffs. Likewise, the infant Plaintiffs cannot recover for loss of consortium unless Wal–Mart committed a legally cognizable tort against the adult Plaintiffs. *See, e.g., Gallimore v. Children's Hosp. Med. Center,* 67 Ohio St.3d 244, 617 N.E.2d 1052, 1057 (1993); *Bowen v. Kil–Kare, Inc.,* 63 Ohio St.3d 84, 585 N.E.2d 384, 391–392 (1992). The Court has sustained Wal–Mart's Motion for Summary Judgment with respect to every claim other than the Plaintiffs' loss of consortium claim. As a result, the Plaintiffs have failed to identify any legally cognizable tort that Wal–Mart committed against any of them. Therefore, their loss of consortium claim necessarily fails, as a matter of law.

## VI. *Conclusion*

Based on the reasoning and citation of authority set forth above, the Plaintiffs' Motion to Strike (Doc. # 38) is overruled. The Plaintiffs' Motion to Certify (Doc. # 39) is overruled. Wal–Mart's Motion for Summary Judgment on Plaintiffs' Remaining Claims (Doc. # 28) is sustained.

In accordance with footnote six, *supra,* Wal–Mart is directed to file, within 10 days from date, either: (1) an affidavit authenticating the deposition excerpts attached to its earlier Motion for Partial Summary Judgment (Doc. # 12); or (2) complete copies of the depositions of Plaintiffs Jennifer Gore and Angie Baird. Following Wal–Mart's compliance with this requirement, the Court will enter final judgment in its favor. Wal–Mart's failure to comply with this requirement, however, will result in the Court vacating its decision herein and reconsidering Wal–Mart's Motion for Summary Judgment on Plaintiffs' Remaining Claims without relying on the unauthenticated deposition excerpts.

This Decision *is not* a final, appealable order.

---

**16.** Although a loss of consortium claim is derivative, it is nevertheless a legally separate and independent claim. *Bowen v. Kil–Kare, Inc.,* 63 Ohio St.3d 84, 585 N.E.2d 384, 391–392 (1992). A loss of consortium claim is "derivative" only in the sense that it depends upon the existence of tortious conduct directed toward someone with whom the plaintiff enjoys a special relationship (*i.e.,* a husband-wife or parent-child relationship). *See, e.g., Gallimore v. Children's Hosp. Med. Center,* 67 Ohio St.3d 244, 251, 617 N.E.2d 1052 (1993) (describing a loss of consortium claim as a "derivative action against a third-party tortfeasor").